## Philadelphia School District v. August

*William J. Woolston*, for appellant.

*C. Brewster Rhoads*, for appellee.

BLANC, J., March 31, 1961.—Bernard August has appealed from an order dismissing him from his position as a public school teacher in the School District of Philadelphia.

Appellant was a teacher of mathematics in the Philadelphia public school system, his service commencing in 1934.

At the written request of Dr. Louis P. Hoyer, the superintendent of schools, Mr. August reported for a professional interview on October 14, 1952, in Dr. Hoyer's office.

Mr. August was informed by Dr. Hoyer that the latter had information in his possession concerning which he wanted to ask Mr. August certain questions, and that those questions had relation to his, Mr. August's, loyalty. Mr. August expressed a desire to consult with counsel prior to his answering those questions. This was agreed to by Dr. Hoyer, who indicated that he would arrange a subsequent conference.

On October 22, 1952, Mr. August telephoned Dr. Hoyer and stated that he had consulted counsel and would not answer questions asked by Dr. Hoyer, concerning his loyalty prior to the enactment of the Pechan Act, the Pennsylvania Loyalty Act of December 22, 1951, P. L. 1726, 65 PS §211.

No action was taken by Dr. Hoyer after this telephone conversation to schedule a second conference.

On November 20, 1953, Mr. August received notice that he was suspended as being incompetent because of his refusal to answer questions of Dr. Hoyer.

On November 25, 1953, formal charges of incompetency and persistent and willful violation of the school laws of this Commonwealth, in violation of the Public School Act, of March 10, 1949, P. L. 30, sec. 1122, as amended, 24 PS §11-1122, were preferred against Mr. August by the board of public education, and the board recommended his dismissal in accordance therewith.

On December 16, 1953, Mr. August, through counsel, sent a letter to the chairman of the Philadelphia School

Board, indicating a willingness to answer questions that might be put to him by the school board or its counsel. This letter was mistakenly addressed to Maurice B. Saul, Esq., Chairman, Philadelphia School Board, Packard Building, Philadelphia 2, instead of the actual chairman, Walter B. Saul, Esq.

During the period of suspension and prior to a hearing before the board of education, Mr. August was subpoenaed to appear before the Subcommittee, also known as the Velde Committee, of the Un-American Activities Committee of the House of Representatives of the United States, on February 17, 1954. After answering preliminary questions concerning himself and his teaching position, he refused to answer questions propounded to him by the committee concerning membership in the Communist Party. He stated that his refusal was based on the First and Fifth Amendments of the United States Constitution.

Shortly thereafter, an additional charge was preferred against Mr. August by the superintendent of schools, to wit, incompetency because of his failure to answer questions propounded to him by the House subcommittee.

On March 9, 1954, formal charges were again preferred by the board of public education in accordance with the Public School Code, supra.

On March 22, 1954, a hearing was held before the board in accordance with the aforementioned act, sections 1127-1131, 24 PS §§11-1127-1131. At this hearing, Mr. August was represented by counsel.

At the commencement of that hearing, counsel for Mr. August informed the chairman of the board that a challenge was being directed to each member of the board concerning the member's qualifications to sit on the board and his or her ability to render an impartial, unbiased decision.

The challenge was based on statements, allegedly reported in the public press, made by some of the board members, which statements, it was argued, indicated that prior to the hearing their minds were made up and their conclusion reached.

Despite counsel's reference to the appearance in the public press of such statements by named members of the board, his request to examine as on voir dire and challenge for cause was denied.

At the hearing, the superintendent of schools testified regarding his one interview and his subsequent telephone conversation with Mr. August. Then, over the objection of counsel, the entire interrogation of Mr. August with reference to his appearance before the House subcommittee was read into the record.

Mr. August voluntarily testified at great length before the board, over objection by counsel for the board, concerning his past and present political affiliations. He testified on direct examination and then was cross-examined by counsel for the board and thereafter by individual members of the board.

Although no witnesses were called to testify on behalf of Mr. August, it was stipulated and made a part of the record that his supervisor would have testified that Mr. August was competent in all respects as a teacher and in all relations with his students.

On April 12, 1954, the board of public education, by a vote of 12 to 3, found that both charges of incompetency and the charge of persistent and willful violation of the school laws were sustained. They thereupon discharged Mr. August from his employment as a teacher.

On appeal, the Superintendent of Public Instruction of the Commonwealth of Pennsylvania affirmed the action by the board of public education.

Mr. August then appealed to this court.

The Public School Code, supra, provides:

"The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, . . . persistent and wilful violation of the school laws of this Commonwealth. . . .": 24 PS §11-1122.

Mr. August was advised that the cause of his discharge was "incompetency" and "persistent and wilful violation of the school laws of the Commonwealth."

There were two charges against him and, if either of them can be sustained, his dismissal was justified: Board of Public Education, School Dist. of Phila., v. Beilan, 386 Pa. 82, 94 (1956).

Under the law of our Commonwealth, a refusal to answer questions put forth by the Subcommittee of the House Un-American Activities Committee is not "incompetency" under the Public School Code: Board of Public Education v. Intille, 401 Pa. 1 (1960). Accordingly, the decision of the board must rise or fall on appellant's alleged failure to answer questions put to him by his superintendent.

In June 1956, the Supreme Court handed down its decision in the Beilan case, in which it upheld the dismissal of Herman A. Beilan as a teacher, Board of Public Education, etc., v. Beilan, supra. Beilan was called before the superintendent of schools and was asked certain questions pertaining to his Communist activities. He requested and was granted time to consult counsel. After Beilan consulted counsel, he again refused to answer the superintendent's questions. Charges of "incompetency" and persistent and wilful violation of the school laws" were brought against him. The board, after consideration of the evidence, discharged him, and the Superintendent of Public instruction upheld the action. This court reversed the Superintendent of Public Instruction, and the Supreme

Court reversed this court (Board of Public Education v. Beilau, 386 Pa. 82).

The Supreme Court pointed out that Beilan was dismissed for his refusal to answer pertinent questions posed by the superintendent of schools bearing directly upon his fitness as a teacher and his competency. We are bound by the law in the Beilan decision.

August attempts to distinguish his appeal from Beilan's. His contention is that the superintendent never asked him any questions. No question having been asked, a logical progression dictates that a refusal to answer could not have followed.

The record discloses merit to this contention.

Dr. Hoyer:

"Q. I am not interested in what you told him; I want to know what you asked him.

"A. I didn't ask him anything.

"Q. Did he refuse to answer anything if you did not ask him anything?

"A. That would hardly be possible": N. T. 47.

It is clear that Mr. August did not refuse to answer any questions at his first interview, none having been asked. Therefore, the second interview, or the lack of one, becomes acute.

Dr. Hoyer himself stated "There was no further conference with Mr. August" (N. T. 22), after he allowed Mr. August to seek advice of counsel. And the following testimony of Dr. Hoyer, the superintendent, rules this case:

"Q. Did you on that date, October 14, tell him that you would arrange for a subsequent hearing?

"A. I indicated to him that I would see him again.

"Q. When did you notify him of when he was to have the next interview?

"A. He called on . . .

"Q. No; answer the question. Did you notify him?

"A. There was no notification because he, on the interview with him . . .

"Q. Please, Dr. Hoyer.

"A. All right, go ahead.

"Q. Did you ever ask him for a second interview?

"A. No, I did not.

"Q. Did he ever refuse to go to a second interview?

"A. No, I didn't ask him to come to a second interview.

"Q. Was there ever a second interview?

"A. What is it? I didn't get it.

"Q. Was there ever a second interview?

"A. There was not a second interview, except over the telephone.

"Q. Was there ever a second interview at your appointment?

"Mr. Soken. Now wait just a moment, sir. Dr. Hoyer started to say there was no second interview except over the . . .

"Mr. Saul. If Dr. Hoyer has not finished his answer, he may finish it. If not, the examination will continue.

"A. I said there was no second interview except over the telephone, and that is what I wanted to say. He called me on the telephone, and I think that constitutes an interview.

"Q. Did you ever tell him, fix a date for a second interview?

"A. I did not. . . .":N. T. 53, 54.

"Q. Did you ever direct Mr. August to answer a question which he refused to answer?

"A. I did not ask Mr. August any question": N. T. 55.

The evidence clearly indicates that the superintendent did not ask any questions at the initial interview

with Mr. August. This meeting was terminated so that Mr. August, with the consent of the superintendent, could consult counsel in an effort to determine what course of action he should take. At this interview the superintendent advised Mr. August that sometime in the future he would be called in for further questioning. No second interview was ever arranged, neither at that time nor at any subsequent time.

The record shows (N. T. 22, 66) that Mr. August telephoned the superintendent to make an appointment for his second interview which was to be scheduled after Mr August had consulted counsel. On the occasion of that call, he spoke to the superintendent himself. Mr. August advised the superintendent that he, Mr. August, had been given the same advice as had been given to other teachers in the same circumstances. No action was taken by the superintendent after this telephone conversation to schedule a second conference.

We note in the Beilan case there was an admitted refusal to answer questions at the first interview, and, after being given the opportunity to consult counsel, a second personal interview was arranged. At this second interview, Beilan persisted in his refusal to answer. We note, too, that Beilan had been informed of the serious nature of the entire matter and that any failure to answer questions put to him by the superintendent might lead to his dismissal. In Board of Public Education, School District of Philadelphia v. Samuel M. Kaplan, C. P. No. 6, December term, 1954, no. 6655, the factual situation presented was strikingly similar to that of the Beilan case. The procedure followed was identical in that there was an admitted refusal to answer questions at *both* interviews, separated by a period in which Kaplan consulted counsel. Kaplan, there, had also been advised that his persistent refusal could lead to dismissal. A majority of this court

held that Kaplan's refusal to answer questions of his superintendent was properly adjudged "incompetency" within the reach of the Beilan doctrine.

The record in the case at bar is devoid of any indication by the superintendent of the severity of Mr. August's intended refusal to answer certain questions.

Dissimilarity also occurs because no second interview was ever arranged for August, and he was not called in to answer questions. Had these factors been present in this case, a result identical to that of Beilan and Kaplan would have been inevitable, barring no denial of due process. May a teacher be dismissed merely on the basis of a telephone call, or should the regular procedures instituted by the superintendent and followed in Beilan and Kaplan be availed of? In those cases, it was the superintendent's policy to arrange and set up a professional and personal interview. Questions were asked of the teacher so that his fitness, as a teacher, could be determined and he was regularly advised of the consequences of his actions. When a teacher requested counsel, the request was granted, and a second meeting was always had and the questions restated. If a second refusal followed, dismissal was justified under the law.

Mr. August, a teacher, was under contract prescribed by the Public School Code of March 10, 1949, supra, and entitled to tenure as a professional employe. By virtue of the same statutory authority, he was subject to dismissal from his teaching position only for cause, upon notice, hearing and right of appeal. In order for the school board to have jurisdiction, a proper charge must first be instituted. In this case, the charge was incompetency, based on an alleged refusal to answer questions posed by the superintendent.

It is apparent that where the charge is of so serious a nature that 20 years of satisfactory rating can be

stricken, and that from one act an unsatisfactory rating and dismissal from service may result, the entire procedure followed must be justified. While Mr. August intimated the course of action he would pursue at the second interview, the mere receipt of a telephone call which purports to set up a future course of conduct, which course of conduct was never tested, cannot be sufficient cause for dismissal. Mr. August should have been afforded the opportunity to meet face to face with his superior and, upon notice of the possible result of his persistent refusal, be given the opportunity to reach a decision. If he then refused, his discharge would be justified.

We do not suggest herein an inherent disagreement with the rationale of the Beilan and Kaplan decisions. We merely point out that all of the factors evidently necessary for dismissal under the facts therein are not present in the case at bar.

We note also with interest that the important factor of locus penitentiae, approved by the Supreme Court in the Intille case *is* present.

This is shown by the fact that Mr. August sent a letter through his attorney to the school board on December 16, 1953, offering to answer all questions that might be put to him by the school board or its counsel.

It is bolstered by the fact that he testified in detail at the hearing concerning his past and present political affiliations. Justice Chidsey, speaking for the majority in the Beilan case, stated: ". . . We know of no case where a teacher has been dismissed who has entirely discarded past subversive affiliations and has abided by a loyalty oath taken in good faith": Page 95.

Accordingly, where the record shows that appellant was never in fact accorded an opportunity to demonstrate the frankness and candor evidently so necessary

to his competency, he cannot be fairly accused of a lack of the same.

The appeal of Bernard August is hereby sustained; the action of the Superintendent of Public Instruction in affirming the Board of Public Education's dismissal of the said Bernard August is reversed and the discharge of said Bernard August is set aside.